**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Emerald Investments, LLC | Case No. 14-13407 |
| Debtor. | |
| In re: | Chapter 11 |
| Ashley River Consulting, LLC | Case No. 14-13406 |
| Debtor. | |

**DISCLOSURE STATEMENT TO ACCOMPANY**
**JOINT PLAN OF LIQUIDATION FILED BY THE TRUSTEE, KRITI**
**RIPLEY, LLC AND ASHLEY RIVER PROPERTIES II, LLC**

**EMMET, MARVIN & MARTIN, LLP**          **GAZES LLC**


/s/ Thomas A. Pitta                           /s/ Ian J. Gazes
Thomas A. Pitta, Esq.                         Ian J. Gazes, Esq.
120 Broadway, 32nd Floor                      151 Hudson Street
New York, New York 10271                      New York, NY 10013
(212) 238-3000 (Telephone)                    (212) 765-9000 (Telephone)
(212) 238-3100 (Facsimile)                    (212) 765-9675 (Facsimile)

                                              **COUNSEL FOR IAN J. GAZES, AS TRUSTEE FOR**
**COUNSEL FOR KRITI RIPLEY, LLC AND**          **EMERALD INVESTMENTS, LLC AND ASHLEY**
**ASHLEY RIVER PROPERTIES II, LLC**            **RIVER CONSULTING, LLC**


Dated:  New York, New York
        June 8, 2015

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF LIQUIDATION WHICH IS ENCLOSED WITH THIS DISCLOSURE STATEMENT.  THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS BELIEVE THAT ACCEPTANCE OF THE PLAN OF LIQUIDATION IS IN THE BEST INTEREST OF THE DEBTOR AND ITS CREDITORS AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALLOWED CLAIMS AGAINST THE DEBTOR.**

Ian J. Gazes (the "**Trustee**"), as chapter 11 trustee of Emerald Investments, LLC ("**Emerald**") and Ashley River Consulting, LLC ("**ARC**" and, together with Emerald, the "**Debtors**"), Kriti Ripley, LLC ("**Kriti**") and Ashley River Properties II, LLC ("**Ashley River II**" and together with the Trustee and Kriti, the "**Proponents**"), respectfully submit this disclosure statement (the "**Disclosure Statement**") pursuant to § 1125 of the Bankruptcy Code to accompany the Joint Plan of Liquidation dated June 8, 2015 (the "**Plan**"), which has been filed with the United States Bankruptcy Court for the Southern District of New York.   A copy of the Plan is annexed hereto as **Exhibit A**. **Capitalized terms contained in this Disclosure Statement, which are not otherwise defined herein, will have the meaning ascribed to such terms in the Plan.**

## ARTICLE I.  DESCRIPTION OF THE DISCLOSURE STATEMENT

### A.    Overview

The purpose of this Disclosure Statement is to provide creditors and equity holders of the Debtor with adequate information to enable them to make an informed judgment concerning the Plan.  The Plan is the document that contains the exclusive and final statement of the rights of the Debtor, its creditors, equity holders and other interested parties, and sets forth what (if anything) each of those groups will receive on account of their respective claims and interests and how they will receive it. It is strongly recommended that the Plan be read in its entirety.  The Disclosure Statement is not a substitute for reading the Plan in full, as the Disclosure Statement simply describes the Plan and provides information about the Debtors and the Chapter 11 Cases.   If the Bankruptcy Court confirms the Plan, it will become binding on the Trustee, the Debtors, all creditors, equity holders and other interested parties.

You are also urged to read the contents of the Disclosure Statement in order to determine what rights you may have to vote on or object to the Plan and before making any decision on any such course of action.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they existed before the institution of this Case.  Please note, however, that this Disclosure Statement cannot tell you everything about your rights.  For instance, this Disclosure Statement cannot and does not provide a complete description of the financial status of the Debtors, all of the applicable provisions of the Bankruptcy Code, or other matters that may be deemed significant by creditors and other parties in interest.  You are also encouraged to consult with your lawyers and/or advisors as you review and consider the Disclosure Statement and the Plan to enable you to obtain more specific advice on how the Plan will affect you.

Creditors whose Claims are impaired under the Plan have the right to vote to accept or reject the Plan.  Generally speaking, a Claim or Interest is impaired if the Plan alters the legal, contractual or

equitable rights of the holder of the Claim or Interest. A Class of creditors accepts the Plan when creditors holding two-thirds in amount of such class and more than one-half in number of the Claims in such class who actually cast their ballots vote to accept the Plan.

In these Chapter 11 Cases, the Plan contains two (2) Classes of Claims and one (1) Class of Interests. Class 1 and 2 Claims and Class 3 Interests are impaired since the Plan alters the legal, contractual and equitable rights of the holders of such Claims and Interests, and are entitled to vote on the Plan. **Accordingly, votes on the Plan will be solicited from holders of Class 1 and 2 Claims and Class 3 Interests.**

**IN THE OPINION OF THE PROPONENTS, THE TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER ANY OTHER ALTERNATIVE FOR THE LIQUIDATION OF THE DEBTOR UNDER CHAPTER 11 OR CHAPTER 7 OF THE BANKRUPTCY CODE. ACCORDINGLY, THE PROPONENTS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS' CREDITORS AND INTEREST HOLDERS AND RECOMMENDS THAT ALL HOLDERS OF CLASS 1 AND 2 CLAIMS VOTE TO ACCEPT THE PLAN.**

B.      **Voting and Confirmation Procedures**

The following materials are included with this Disclosure Statement:

1.      A copy of the Plan; and

2.      A Ballot for holders of Claims in Classes 1 and 2 and Interests in Class 3 to vote with respect to the Plan.

The form of Ballot and the related materials delivered together herewith are being furnished, for purposed of soliciting votes on the Plan, to Class 1 and 2 Claimants and holders of Class 3 Interests.

This Disclosure Statement will be submitted for approval by the Bankruptcy Court at the Confirmation Hearing together with the Plan. The Proponents submit that the information contained herein is of the kind, and is sufficiently detailed, to enable a hypothetical, reasonable investor typical of the class being solicited to make an informed judgment concerning the Plan.

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for **August 5, 2015 at 10:00 a.m. (the "Confirmation Hearing").** Holders of Claims and Interests and other parties in interest may attend this hearing. Objections to confirmation of the Plan, if any, must be in writing and filed with the Bankruptcy Court and served, so as to be received no later than **July 22, 2015 at 4:00 p.m.**, upon all of the following parties:

> Emmet, Marvin & Martin, LLP
> Counsel to Kriti and Ashley River II
> 120 Broadway – 32nd Floor
> New York, NY 10271
> Attn:   Thomas A. Pitta, Esq.
>
> -- and --
>
> Gazes LLC
> Counsel to the Trustee
> 151 Hudson Street
> New York, New York 10013
> Attn:   Ian J. Gazes, Esq.

All votes to accept or reject the Plan must be cast by using the form of Ballot. No votes other than ones using such Ballot will be counted except to the extent the Bankruptcy Court orders otherwise.   After carefully reviewing the Plan and this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan on the Ballot.   All Ballots with respect to the Plan must be completed in full and signed to be counted in the tabulation of the votes and must be received no later than **July 29, 2015 at 5:00 p.m. (the "Voting Deadline")**, upon:

> Gazes LLC
> Counsel to the Trustee
> 151 Hudson Street
> New York, New York 10013
> Attn:   Ian J. Gazes, Esq.

Parties holding Allowed Claims shall be those (a) who have filed timely proofs of claim (or untimely proofs of claim that have been allowed as timely by the Bankruptcy Court under applicable law on or before the Voting Deadline) that have not been disallowed by an order of the Bankruptcy Court entered on or before the Voting Deadline, (b) whose Claims are listed in the Schedules (other than those which have either been satisfied by payment in full or scheduled as (x) unliquidated, contingent or disputed and/or (y) zero or unknown in amount), provided that such scheduled claims have not been amended or superseded by proofs of claim filed with respect thereto, and (c) whose Claims are allowed under a prior Final Order, the Plan and/or the Confirmation Order. To the extent scheduled claims have been amended or superseded by proofs of claim with respect thereto, the amount of such Claim on the proof of claim shall control for purposes of voting, subject to the following:

> a.  Creditors who filed proofs of claim for unknown, undetermined, wholly unliquidated, or contingent amounts will count for satisfying the numerosity requirement of § 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00 solely for the purpose of satisfying the dollar amount provisions of  § 1126(c) of the Bankruptcy Code,

    b.  if a Claim is partially liquidated and partially unliquidated, such Claim shall be allowed for voting purposes only in the liquidated amount,

    c.  so as to avoid duplication and reduce expenses, creditors who have filed or purchased duplicate Claims in any given Class shall be entitled to receive only one solicitation package and shall be allowed one Ballot for voting their Claims with respect to that Class, regardless of whether any party has objected to such duplicate Claims,

    d.  Claims that have been amended and superseded by a subsequently filed Claim will be disallowed for voting purposes regardless of whether any party has objected to such amended Claims,

    e.  if an objection is filed to a Claim, such Claim will count for satisfying the numerosity requirement of § 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00 solely for the purpose of satisfying the dollar amount provisions of  § 1126(c) of the Bankruptcy Code,

    f.  Claims filed for $0.00 are not entitled to vote; and

    g.  for purposes of the numerosity requirement of § 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

So as to avoid uncertainty and inconsistent results, Ballots in the following categories will not be counted, unless otherwise ordered by the Bankruptcy Court:

    1.  Ballots that partially reject and partially accept the Plan will not be counted,

    2.  Any Ballot that is illegible or contains insufficient information to permit the identification of the Claimant will not be counted,

    3.  Ballots that fail to indicate an acceptance or rejection of the Plan, or that indicate both acceptance and rejection of the Plan, will not be counted,

    4.  Unless previously authorized by the Proponents, only Ballots that are timely received with original signatures will be counted. Unsigned Ballots, or Ballots that are illegible or contain insufficient information to permit the identification of the holder of a Claim, will not be counted,

5. Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted,

6. Facsimile Ballots, or Ballots submitted via email or other electronic transmission, will not be counted, unless the holder of the Claim receives the consent of the Debtor to submit its Ballot by facsimile, e-mail or other electronic transmission, and

7. If a Holder of Claims simultaneously casts inconsistent Ballots, such Ballots shall not be counted.

Any party who has previously submitted, prior to the Voting Deadline, a properly completed Ballot may revoke such Ballot and change his or its vote by submitting prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one properly completed Ballot is received, only the last timely received Ballot shall be counted for purposes of determining whether the requisite acceptances have been received.

The following is a description of the assets, liabilities and financial affairs of the Debtors, a description and analysis of the Plan, and an analysis of alternatives to the Plan.

C.      **Representations/Limitations.**

**NO PERSON IS AUTHORIZED BY THE PROPONENTS IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF VOTES THEREON TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ANNEXED HERETO OR INCORPORATED HEREIN BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE PROPONENTS.**

**NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU.**

**THE INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE PROPONENTS IN GOOD FAITH, BASED UPON UNAUDITED INFORMATION AVAILABLE TO THE PROPONENTS AS OF THE DATE HEREOF.  ALTHOUGH THE PROPONENTS HAVE USED THEIR BEST EFFORTS TO ENSURE THAT SUCH INFORMATION IS ACCURATE, THE INFORMATION CONTAINED HEREIN IS UNAUDITED.  THE PROPONENTS BELIEVE THAT THIS DISCLOSURE STATEMENT COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE ANY**

IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE COMMITTEE OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR AN INTEREST IN THE DEBTOR.

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF.  EACH CREDITOR AND INTEREST HOLDER IS ENCOURAGED TO READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.

THE PROPONENTS BELIEVE THAT THIS DISCLOSURE STATEMENT CONTAINS INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE A HYPOTHETICAL REASONABLE INVESTOR TYPICAL OF HOLDERS OF CLAIMS AND INTERESTS OF RELEVANT CLASSES TO MAKE AN INFORMED JUDGMENT CONCERNING WHETHER TO VOTE FOR OR AGAINST THE PLAN.  THE BANKRUPTCY COURT HAS NOT VERIFIED THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NONBANKRUPTCY LAW. PERSONS OR ENTITIES HOLDING OR TRADING IN, OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, THE DEBTORS, SHOULD EVALUATE THIS DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT AND THE PLAN PROVIDE FOR INJUNCTIVE RELIEF AS TO THE PROPONENTS, THE DEBTOR AND RELATED PARTIES.  THE PERMANENT INJUNCTIONS SET FORTH IN THE PLAN WILL APPLY TO HOLDERS OF ANY CLAIM, INTEREST, LIEN, ENCUMBERANCE OR DEBT, WHETHER SECURED OR UNSECURED, GRANTED PRIORITY STATUS, INCLUDING PRIORITY TAX (FEDERAL OR STATE), NON-PRIORITY UNSECURED CLAIM OR ANY INTEREST IN THE DEBTOR.  CREDITORS AND INTEREST HOLDERS WILL BE BOUND BY THESE INJUNCTIVE PROVISIONS UNLESS CREDITORS TIMELY FILE OBJECTIONS IN ACCORDANCE WITH THE PROVISIONS SET FORTH IN THE

**DISCLOSURE STATEMENT ORDER OR HEREIN AND APPEAR AT THE CONFIRMATION HEARING, TO PROSECUTE ANY OBJECTION.**

**THE PROPONENTS URGE ALL HOLDERS OF CLASS 1 AND 2 CLAIMS TO VOTE TO ACCEPT THE PLAN.**

## ARTICLE II.        BACKGROUND

### A.    The Debtors' Business

Emerald is a holding company controlled by Stuart Longman ("**Longman**") whose primary asset is a 70% membership interest in Ashley River II (the "**Emerald Membership Interest**"). Kriti and Emerald formed Ashley River II in 2003 for the purpose of developing a marina and condominiums (the "**Marina Property**") on a parcel of property in Charleston, South Carolina.

Upon the formation of Ashley River II, Kriti and Emerald entered into the Operating Agreement of Ashley River Properties II, LLC (the "**Operating Agreement**"). Pursuant to the Operating Agreement, Emerald made in-kind contributions, including the Real Property, in exchange for the Emerald Membership Interest, and Kriti contributed $1.25 million in cash in exchange for the remaining 30% membership interest.

In 2005, an arbitration panel in New York found that Longman and Emerald diverted Ashley River II's funds "by wrongfully making payments [from Ashley River II] which were not on the approved Marina budget or on the budget for future phases of the project." The Panel further held that Emerald and Longman violated the Agreement "by making payments to or for the benefit of Longman or other entities Longman controlled, which were totally unrelated to Ashley River II." The Panel held "Emerald and Longman commingled [Ashley River II's] funds in various non-[Ashley River II] accounts, including an account, in part in the name of Longman's wife, Gayla Longman." In addition to the diversion of Kriti's equity contribution, the Panel held that Emerald and Longman violated the Operating Agreement "by diverting $150,000.00 of . . . loan proceeds and paying themselves instead of paying" other legitimate Ashley River II expenses for which those funds were earmarked.

As a result of Emerald's and Longman's wrongful conduct, the Panel held that Emerald forfeited all voting rights in Ashley River II. In a separate arbitration decision, Kriti and Ashley River II (collectively, the "**Creditors**") were awarded additional amounts following an accounting of the Ashley River II funds improperly used by Emerald and Longman. The awards were confirmed by the New York Supreme Court on February 15, 2008. As a result of these awards, the Creditors have a judgment against Emerald and Longman in the amount of $1,678,023 as of the Petition Date (including post-judgment interest) (the "**Judgment**").

### B.    Events Leading to the Commencement of the Case

In an effort to collect the Judgment, the Creditors perfected a lien upon the Emerald Membership Interest by way of a charging order issued by the Charleston County Court of Common Pleas (the "**Circuit Court**") on October 17, 2008 (the "**Charging Order**"). With the collapse of the real estate market, and, in particular, the "dockominium" (a/k/a the boat slip condominium sales) market

the Marina Property project has stalled and the Creditors have been unable to recover anything on the Judgment. Ashley River II has failed to make a profit and has made no distributions.

Between 2008 and 2014, Ashley River II lost a total of $3,356,519, and suffered a minimum of $157,431 in losses for each such year. Ashley River II expects to make no distributions in the foreseeable future.

On February 1, 2011, the Creditors filed a motion in the Circuit Court seeking to foreclose on the Emerald Membership Interest. The Circuit Court denied the Foreclosure Motion. However, following an appeal, the South Carolina Supreme Court issued a decision reversing the Circuit Court's decision and remanding for the foreclosure and sale of the Emerald Membership Interest "without further delay."

On July 15, 2014, the Circuit Court entered an *Order of Foreclosure and Sale* (the "**Foreclosure Order**") ordering the sale of the Emerald Membership Interest (the "**Sale**"). On October 21, 2014, the Circuit Court granted Emerald's motion to amend the Foreclosure Order and ordered that the Sale "be conducted in accordance with and subject to the procedures followed for the foreclosure of a real estate mortgage" in South Carolina. The Sale of the Emerald Membership Interest was scheduled for December 16, 2014 at 11:00 a.m. The Debtor commenced this case on December 15, 2014 (the "**Petition Date**") in order to prevent the completion of the Sale.

### ARTICLE III.   SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

**A.   The Creditors Motion to Dismiss**

On February 2, 2015, the Creditors filed the *Motion of Kriti Ripley, LLC and Ashley River Properties II, LLC for an Order (a) Dismissing the Debtors' Cases or, in the Alternative, (b) Granting Relief from the Automatic Stay* [Docket No. 22][1] (the "**Motion to Dismiss**"). Emerald and Schulte Roth & Zabel LLP ("**Schulte**") objected to the Motion to Dismiss.

On February 24, 2015, the Court held a hearing with respect to the Motion to Dismiss. The Court denied the Motion to Dismiss, but expressed its belief that a motion to appoint a chapter 11 trustee may be appropriate.

**B.   The Appointment of the Trustee**

Thereafter, on March 4, 2015, the Office of the United States Trustee (the "**US Trustee**") filed its *Motion of the United States Trustee for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee* (the "**Trustee Motion**") [Docket No. 38]. The Creditors filed a *Statement of Kriti Ripley, LLC and Ashley River Properties II, LLC in Support of Motion of the United States Trustee for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 41]. Emerald objected to the Trustee Motion.

---

[1]    Except as otherwise noted, docket references herein shall refer to the docket in the Emerald Chapter 11 Case rather than the ARC Chapter 11 Case.

On March 16, 2015, following a hearing on the Trustee Motion, the Court entered the *Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 45] and on March 18, 2015, the Court entered the *Order Approving the Appointment of the Chapter 11 Trustee* [Docket No. 48] approving the appointment of Ian Gazes as the Trustee.

**C.    The Dissociation Notice**

Also on March 16, 2015, Longman issued to the Creditors, purportedly on behalf of Emerald, a "Notice of Triggering Event and Offer to Sell Membership Shares" purporting to commence a dissociation process under the Operating Agreement (the "**Dissociation Notice**"). Following the appointment of the Trustee, the Trustee withdrew without prejudice the Dissociation Notice in order to permit discussions to proceed regarding a resolution of matters within the Chapter 11 Cases.

**D.    The Plan Negotiations**

Along those lines, the Trustee, the Creditors and Longman engaged in discussions and negotiations concerning the appropriate method for bringing these Chapter 11 Cases to a conclusion. The negotiations between the Trustee and the Creditors were successful and let to the formulation of the Plan. The Trustee and the Creditors believe that the Plan, including the opportunity for the Trustee to market, and if possible sell, the Marina Property, represents the best method to (a) monetize the Emerald Membership Interest, (b) resolve the disputes between Emerald and the Creditors and (c) obtain value for the Debtors' creditors. The Creditors have authorized the Trustee to offer for sale the 100% fee interest of the Marina Property, pursuant to which sale the Trustee seeks to monetize Emerald's 70% membership interest in Ashley River II.

**E.    Debtor's Schedules**

On December 29, 2014, the Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs [Emerald Docket Nos. 9 and 10 and ARC Docket Nos. 7 and 8], and on February 20, 2015, Emerald filed an amended Schedules of Assets and Liabilities [Emerald Docket No. 31] (collectively, the "**Schedules**"). The Schedules set forth, among other things, amounts the Debtors believe they owe to various parties.

Emerald listed only three creditors with claims that were not contingent, unliquidated or disputed, including Ashley River II's secured claim[2] and two (2) creditors with nonpriority claims.

---

[2]    The Creditors do not agree with the amount listed as the value of the claim of Ashley River II because it excludes interest accrued through the Petition Date. The Proponents have agreed to fix the amount of the claim at $1,687,023.24 as of the Petition Date pursuant to the Plan.

## ARTICLE IV.          DESCRIPTION OF THE PLAN

### A.      Chapter 11 Plans Generally

Confirmation and consummation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the claims against and interests in a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, confirmation of a plan by the Bankruptcy Court makes the plan binding on the debtor, any person acquiring property under the plan and all of the debtor's creditors and equity holders, and the prior obligations owed by the debtor to such parties and/or the equity interests in the debtor are compromised and satisfied by the treatment specified in the plan. Before soliciting acceptances of a proposed plan, however, § 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment in voting to accept or reject the plan.

The Proponents are submitting this Disclosure Statement to holders of Impaired Claims against the Debtors to satisfy the requirements of § 1125 of the Bankruptcy Code. If all Impaired Classes of Claims and Interests entitled to vote on the Plan accept the Plan, the Bankruptcy Court may confirm the Plan if the Bankruptcy Court independently determines that the requirements of § 1129(a) of the Bankruptcy Code have been satisfied. In these Chapter 11 Cases, the Proponents believe that the Plan satisfies all applicable requirements of §1129(a) of the Bankruptcy Code.

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the bankruptcy court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. Only the holders of claims who actually vote will be counted as either accepting or rejecting the plan.

In general, a chapter 11 liquidating plan must (i) divide claims and interests into separate categories and classes, (ii) specify the treatment that each category and class is to receive under such plan, and (iii) contain other provisions necessary to implement the liquidation of a debtor. A chapter 11 plan may specify that the legal, equitable, and contractual rights of the holders of claims or interests in certain classes are to remain unchanged by the liquidation effectuated by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to vote to accept the plan. Classes of claims or equity interests that are "unimpaired" under a chapter 11 plan are conclusively presumed to have accepted the plan under § 1126(f) of the Bankruptcy Code and, thus, are not entitled to vote. Pursuant to § 1124(1) of the Bankruptcy Code, a class of claims or interests is "impaired" and entitled to vote on a plan, unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." Furthermore, classes that will not receive or retain any property under the plan are conclusively deemed to have rejected the plan under § 1126(g) of the Bankruptcy Code and are also, therefore, not entitled to vote. Accordingly, only those persons who hold claims or equity interests in an impaired class that receive or retain property are entitled to vote with respect to a plan.

**Classes 1, 2 and 3 under the Plan are impaired under the Plan and, therefore, are entitled to vote on the Plan. Accordingly, the Proponents are soliciting votes from holders of Claims in Classes 1 and 2 and Interests in Class 3.**

### B.    Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan shall classify the claims and interests of a debtor's creditors and equity interest holders. In compliance with § 1122 of the Bankruptcy Code, the Plan divides the holders of Claims into 3 unclassified categories and 3 Classes, and sets forth the treatment to be provided to each Class.[3] These Classes take into account the differing nature and priority of Claims against the Debtor. Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5). A "claim" against the Debtor also includes a claim against property of the Debtor, as provided in § 102(2) of the Bankruptcy Code. 11 U.S.C. § 102(2). An "interest" is an equity interest in a debtor.

For the holder of a Claim to participate in a plan and receive the treatment offered to the class in which it is classified, its Claim must be "Allowed." Under the Plan, "Allowed" means with reference to any Claim, the amount of a Claim that has not been previously satisfied:

> i.    listed on the Schedules in a liquidated amount and not listed as either zero in amount, disputed, contingent or unliquidated,

> ii.    for which a proof of such Claim was timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Final Orders of the Bankruptcy Court establishing the Bar Dates, and not subject to any objection to the allowance thereof within any applicable period of limitation,

> iii.    as to which any objection has been interposed, to the extent such Claim has been allowed by a Final Order, or

---

[3] A plan proponent is required under § 1122 of the Bankruptcy Code to classify the claims and interests of a debtor's creditors and interest holders into classes containing claims and interests that are substantially similar to the other claims or interests in such class. While the Proponents believe that the classification of all Claims is in compliance with the provisions of § 1122 of the Bankruptcy Code, it is possible that a holder of a Claim may challenge the Proponent's classification scheme and the Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the present intent of the Proponents, to the extent permitted by the Court, to modify the Plan to provide for whatever reasonable classification might be required by the Bankruptcy Court for confirmation, and to use the acceptances received by the Proponents from any holder of a Claim pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder of a Claim is ultimately deemed to be a member.

      iv.   any Claim specifically identified in the Plan as an Allowed Claim or in any contract, instrument or other agreement entered into prior to the Effective Date if approved by the Bankruptcy Court pursuant to a Final Order.

An "Allowed Claim" shall be net of any valid setoff or recoupment. Except as otherwise expressly provided in the Plan, the term "Allowed Claim" shall not, for the purposes of computation of distributions under the Plan, include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, treble damages, or any other Claims or obligations that do not compensate for actual losses incurred or (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

When referring to an Interest, "Allowed" means that such Interest is registered in the stock register, membership interest register or any similar register or schedule maintained by or on behalf of the Debtors and not timely objected to or that is allowed by a Final Order.

**C.      Treatment of Claims Under the Plan**

The Plan segregates the various Claims against the Debtor into the following groups: (a) the unclassified Claims, which comprise of Administrative Claims, Statutory Fees, Professional Claims, and Priority Claims, (b) the classified Claims, which comprise of Class 1 Kriti Claims and Class 2 General Unsecured Claims, and (c) Class 3 Interests. Under the Plan, Claims in Classes 1 and 2 are impaired and Interests in Class 3 are impaired. The treatment accorded to the impaired Classes under the Plan represents the best treatment that can be provided to such Classes pursuant to the priority provisions of the Bankruptcy Code. Set forth below is a summary of the Plan's treatment of the various categories and Classes of Claims and Interests. This summary is qualified in its entirety by the full text of the Plan. In the event of an inconsistency between the Plan and the description contained herein, the terms of the Plan shall govern. The Plan is complicated and substantial. Time should be allowed for its analysis and consultation with a legal and/or financial advisor is recommended and should be considered.

**D.      Summary of Plan**

The Plan will be funded by (a) the contribution by Kriti of sufficient cash to fund the Administrative Claims Fund and (b) to the extent there is a 363 Sale, any Estate 363 Proceeds. The Distribution to General Unsecured Creditors, if any, under the Plan will be funded by the Estate 363 Proceeds. The Distribution to Kriti on account of its Class 1 Claim under the Plan will be funded by (a) if the 363 Sale shall occur, all Estate 363 Proceeds up to the full Allowed Amount of the Kriti Claims (after funding the Administrative Claims Fund) and (b) if the 363 Sale shall not occur (because no bidder bids in excess of the Strike Price), the distribution to Kriti of the Emerald Membership Interests in full and final satisfaction of the Allowed Kriti Claims. Further, on the Effective Date of the Plan, the Trustee will establish the Administrative Claims Fund and take any and all other actions not inconsistent with the terms of the Plan that are appropriate or necessary to effectuate the terms and provisions of the Plan.

The Plan is organized into Articles.  Article I contains the definitions and rules of interpretation of terms used in the Plan.  Article II provides for the treatment of Administrative Claims, Statutory Fees, Professional Claims, and Priority Claims, which are not classified pursuant to § 1123(a)(1) of the Bankruptcy Code.  Article III designates the classes of Claims and Interests that must be classified pursuant to § 1123(a)(1) of the Bankruptcy Code and sets forth the treatment to be afforded such Claims and Interest in each class.  Article IV contains the treatment of the Debtor's remaining executory contracts and unexpired leases, if any.  Article V sets forth the means for execution and implementation of the Plan.  Article VI describes the procedures for the making of Distributions under the Plan.  Article VII provides for the release of liens pursuant to the Plan. Article VIII describes the effect of confirmation of the Plan, including an injunction against taking certain further actions against the Proponents, the Debtors and certain other parties in interest. Article IX describes the parties entitled to vote upon the Plan.  Article X sets forth the conditions precedent for confirmation and the Effective Date of the Plan, which includes the fulfillment of the requirements set forth in § 1129(a) of the Bankruptcy Code.  Articles XI provides for the retention of jurisdiction by the Bankruptcy Court for specified purposes.  Finally, XII contain miscellaneous provisions regarding the terms and conditions of the Plan.

## E.    Definitions

The definitions in Article I are of two types: (a) terms of art in bankruptcy practice, and (b) shorthand labels or references to a name or concept that would otherwise take longer to express. With respect to the first type, every effort has been made to make such definitions correspond to the definitions used in the Bankruptcy Code, the Bankruptcy Rules or general bankruptcy practice. Definitions such as "Claim" and "Interests" are examples of definitions in the first category.  The definition of "Debtor" is an example of definitions in the latter category.

## F.    Treatment of Unclassified Categories of Claims

Article II provides for payment of fees of the Administrative Claims, Statutory Fees, Professional Claims, and Priority Claims, which are not required to be classified under §1123(a)(1) of the Bankruptcy Code.

(1)    U.S. Trustee Fees

There are fees payable to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6) (the "**UST Fees**"), which is a non-classified category of Claims.  The Trustee will pay all outstanding amounts due to the U.S. Trustee out of the Administrative Claims Fund upon confirmation of the Plan and, thereafter, through the Case Closing Date as and when due.

(2)    General Administrative Claims

General Administrative Claims are the costs and expenses incurred during the Chapter 11 Cases (except for Professional Fees and UST Fees).  The Debtors are holding companies only and do not operate any business.  Therefore, the Debtor believes that no any Allowed Administrative Claims other than Professional Claims exist.

Except for (1) Professionals requesting compensation or reimbursement for Professional Fees, (2) UST Fees, and (3) Claims arising in the ordinary course of a commercial relationship with the Debtors), requests for payment of Administrative Claims are required to be filed no later than 30 days following the Effective Date. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not timely file such requests shall be forever barred from asserting such Claims against the Trustee, the Debtors or their property, the Estates or the Assets, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

Holders of an Allowed Administrative Claim will be paid from the Administrative Claim Fund, on the Effective Date or as soon thereafter as is practicable, in full (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which the Proponents and the holder of such Allowed Administrative Claim have agreed upon in writing.

(3)    Professional Fees

The payment of Professional Fee Claims can only be made after the Bankruptcy Court has allowed such fees upon application of each respective Professional.  The Professional Fee Claims are anticipated to consist of (a) the fees of Gazes LLC, bankruptcy counsel to the Trustee, (b) if applicable, Trustee Commissions, and (c) the commissions, if any, of Colliers International Charleston, LLC, the broker retained by the Trustee to market the Marina Property.

All final applications for payment of Professional Fees for the period through and including the Effective Date shall be filed with the Bankruptcy Court no later than the date that is 45 days after the Effective Date, and served on the parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.  Any Professional Fee Claim that is not asserted in accordance with the Plan shall be deemed Disallowed under the Plan and the holder thereof shall be enjoined from asserting any claim or process to collect, offset, recoup or recover such Claim against the Debtor, the Estate or any of their respective Assets or properties.

The holder of an Allowed Professional Claim shall receive on account of such Allowed Professional Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Professional Claim, (a) Cash equal to the unpaid portion of such Allowed Professional Claim or (b) such other treatment as to which the Proponents and the holder of such Allowed Administrative Claim have agreed upon in writing.

(4)    Priority Claims

Priority Claims consist of Claims against the Debtor described in section 507(a) of the Bankruptcy Code to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim.

Each holder of an Allowed Priority Claim against the Debtors shall receive the amount of such holder's Allowed Priority Claim with interest, but excluding any associated fees, costs or charges, accruing after the Effective Date in full on the Effective Date.  The Proponents do not believe any such Priority Claims exist.

## ARTICLE V.        Classification and Treatment of Claims and Interests

Article III of the Plan divides all Claims against, and Interests in, the Debtors into Classes and provides for the treatment of such Classes of Claims and Interests.  The Classes consist of Claims and Interests, rather than creditors or equity holders, because one creditor or equity holder may hold more than one kind of Claim or Interest and § 1122 of the Bankruptcy Code requires that certain kinds of Claims and Interests be given certain treatment.  The classification and the treatment of the Classes and Interests are summarized herein, as follows:

(1)    **Class 1 Kriti Claims**

The Class 1 Claims consist of the Kriti Claims, which are Allowed secured claims in the amount of $1,687,023.24.   The Class 1 Kriti Claims are impaired under the Plan.   The holders of Allowed Class 1 Kriti Claims shall receive:

(a) in the event the 363 Sale occurs, all 363 Estate Proceeds after funding the Administrative Claims Fund, up to the Allowed amount of the Kriti Claim, including interest accruing Pre-Petition and Post-Petition, in full and final satisfaction of the Allowed Kriti Claims; and

(b) in the event the 363 Sale does not occur, the Emerald Membership Interest in full and final satisfaction of the Kriti Claim.

Class 1 Claims are impaired under the Plan.  As Proponents of the Plan, the holders thereof are deemed to accept the Plan.

(2)    **Class 2 General Unsecured Claims**

Class 2 Claims consist of General Unsecured Claims, which are impaired under the Plan.  The holders of Allowed Class 2 Claims shall receive:

(a) in the event the 363 Sale occurs, each holder of a Class 2 Claim shall be paid its pro rata share of (a) the Estate 363 Proceeds, after payment of all costs of post-confirmation administration that exceed the Administrative Claims Fund; and

(b) in the event the 363 Sale does not occur, holders of Class 2 Claims will receive no distribution under the Plan.

Since Class 2 Claims are impaired under the Plan, the holders thereof are entitled to vote on the Plan.

The Allowed General Unsecured Claims are expected to total approximately $2.7 million.  The recovery on account of Allowed Unsecured Claims is dependent upon the price paid for the Marina Property, if any.

(3)  **Class 3 Interests**

Class 3 consists of Interests, which are impaired under the Plan.  The holders of Class 3 Interests will receive:

(a)  in the event the 363 Sale occurs, any Estate 363 Proceeds available after distributions are made to the holders of Allowed Claims in Claims 1 and 2; and

(b)  in the event the 363 Sale does not occur, the holders of Class 3 Interests will retain no property on account of the Interests under the Plan.

Since Class 3 Interests are impaired under the Plan, the holders thereof are entitled to vote on the Plan.

 On the Case Closing Date, all Interests in the Debtor issued and outstanding as of the Record Date, as well as any preemptive, redemption, dividend and registration rights relating thereto, or option and warrants relating thereto, will be canceled.

## ARTICLE VI.        Means for Implementation of the Plan

### A.    Implementation of the Plan

The Plan will be implemented by the Trustee in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

All costs and expenses associated with the administration of the Estate, including reasonable compensation for the Trustee and any professionals retained by the Trustee will be the responsibility of and paid by the Estate from the Administrative Claims Fund or, if the Administrative Claims Fund is exhausted, the Estate 363 Proceeds.

### B.    Vesting of Assets

Pursuant to Bankruptcy Code § 1141(b), the Estate 363 Proceeds will vest in the Estate free and clear of all Claims, liens, encumbrances, charges, and other rights and interests of claimants arising on or before the Effective Date, but subject to the terms and conditions of the Plan and the Confirmation Order.  The Trustee will (i) retain all books, records, and files of the Debtors and the Estates, and (ii) provide for the retention and storage of such books, records, and files until such time as the Trustee determines, in his best business judgment, that retention of same is no longer necessary or required.

### C.    363 Sale

In connection with the Plan, Kriti and Ashley River II have authorized the Trustee to market and, to the extent a buyer pays in excess of the Strike Price, sell the Marina Property. In the event the Trustee sells the Marina Property, the Trustee shall turn the proceeds of the 363 Sale over to Ashley River II after satisfaction of the Broker Commission and funding of the Administrative

17

Claims Fund, and Ashley River II shall distribute such proceeds (a) first, in satisfaction of any and all debt obligations owed by Ashley River II[4] and (b) second, in accordance with the Ashley River II Operating Agreement.  Ashley River II shall provide an accounting to the Trustee with respect to such distributions.

The Strike Price was agreed to by the Proponents in order to let the market dictate the value of the Marina Property while not requiring the Creditors to agree to a sale at a price that is insufficient to (a) satisfy the undisputed debts of Ashley River II, (b) satisfy at least a material portion of the Judgment out of the amounts payable on account of the Emerald Membership Interest and (c) potentially result in equity payable to Emerald for the benefit of its creditors other than Kriti and Ashley River II.

While a sale of the Marina Property for the $18 million Strike Price would not result in the repayment of the Creditors' secured claim in full or a distribution to the unsecured creditors of Emerald, the Creditors agreed to set the Strike Price at that level in order to attract potential bidders who might be less inclined to participate in the bidding at a higher strike price.

For demonstrative purposes, the following charts reflect approximately how the sale proceeds would flow upon the sale of the Marina Property at (a) the Strike Price and (b) at $25 million.

| | |
|---|---|
| **Purchase Price** | $18,000,000 |
| Ashley River II Liabilities | -$14,624,251 |
| Broker Commissions | -$900,000 |
| Emerald Administrative Expenses | -$50,000 |
| **Net Cash for Distribution to Ashley River II Members on Account of Capital Contributions** | $2,425,749 |
| | |
| **Pro Rata Distributions to  Ashley River II Members on Account of Capital Contributions** | |
| Kriti - $3.25 Million in Capital plus repayment of Judgment from Emerald share | $2,425,749 |
| Emerald - $2.5 Million in Capital less repayment of Kriti Judgment | $0 |
| **Net Cash for Distribution to Ashley River II Members on Account of Equity Interests** | $0 |
| | |
| **Pro Rata Equity Distributions** | |
| Emerald - 70% | $0 |
| Kriti Ripley - 30% | $0 |

For demonstrative purposes, the following chart reflects how funds would flow upon the sale of the Marina Property upon a sale of the Marina Property for $25 million.

---

[4]    The Proponents have reached agreement upon the amount of the debt obligations owed by Ashley River II as of December 31, 2014.  Those obligations are agreed to have been $14,624,251.34.

| | |
|---|---|
| **Purchase Price** | $25,000,000 |
| Ashley River II Liabilities | -$14,624,251 |
| Broker Commissions | -$1,250,000 |
| Emerald Administrative Expenses | -$50,000 |
| **Net Cash for Distribution to Ashley River II Members on Account of Capital Contributions** | $9,075,749 |
| | |
| **Pro Rata Distributions to Ashley River II Members on Account of Capital Contributions** | |
| Kriti Ripley - $3.25 Million in Capital plus repayment of judgment | $4,928,023 |
| Emerald - $2.5 Million in Capital less repayment of judgment | $821,977 |
| **Net Cash for Distribution to Ashley River II Members on Account of Equity Interests** | $3,325,749 |
| | |
| **Pro Rata Equity Distributions** | |
| Emerald - 70% | $2,328,024 |
| Kriti Ripley - 30% | $997,725 |

## D.     Marketing

The Trustee has selected (subject to Bankruptcy Court approval) Colliers, Inc. to continue to market the Marina Property. Parties interested in acquiring the Marina Property must submit, at least seven (7) days prior to the Confirmation Hearing: (a) a purchase and sale agreement for the Marine Property, acceptable to the Trustee, Kriti and Ashley River II, on an as-is, where-is basis, not subject to contingencies for financing, corporate or shareholder approval, or due diligence, with a cash purchase price of not less than the Strike Price, and (b) a cash deposit of not less than 10% of the purchase price under such purchase and sale agreement (a "**Qualified Bid**").

## E.     Auction

In the event the Trustee receives more than one Qualified Bid, the Trustee will conduct an auction (the "**Auction**") of the Marina Property one business day prior to the scheduled Confirmation Hearing. At the conclusion of the Auction, the Trustee, in consultation with Kriti and Ashley River II, shall select a successful bidder, to whom the Marina Property shall be sold in accordance with the Plan. The Trustee may also select a backup bidder in the event the successful bidder fails to close, and the Trustee may hold the deposits submitted by the successful bidder and the backup bidder until the closing of the 363 Sale.

## F.     Dissolution of the Debtor

ARC shall be deemed dissolved upon the Effective Date with no distributions to holders Claims against or Interests in ARC. If the 363 Sale shall not occur, Emerald shall be deemed dissolved immediately following the distribution of the Emerald Membership Interests and the satisfaction of Allowed Administrative Claims.  In the event the 363 Sale shall occur, Emerald shall be deemed dissolved automatically one day following the distribution by the Trustee of all Estate 363 Proceeds.

19

### G.     Abandonment of Florida Properties

As of the Effective Date, the Trustee shall abandon the Florida Properties.  Emerald listed the Florida Properties on the Schedules at an aggregate value of $10,000.  Based on the Trustee's diligence, it appears the Trustee would be required to expend significant time and money to sell the Florida Properties and that any such sale is unlikely to return material value to the Estates and therefore such properties have *de minimis* value.

### H.     Cancellation of Instruments, Securities and Other Documentation

Except to the extent otherwise provided under the Plan or the Confirmation Order, upon the Effective Date, all Pre-Petition agreements (other than assumed contracts and third party guaranties and indemnities of the Debtor's obligations), credit agreements, Pre-Petition loan documents and Post-Petition loan documents to which either or both Debtors is a party, and all lien claims and other evidence of liens against the Debtors, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtors or the Trustee.  The holders of or parties to such cancelled instruments, agreements, securities and other documentation will have no remaining rights arising from or relating to such documents or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

### I.     Objections to Claims

All proofs of Claim Filed after the applicable Bar Date are disallowed in their entirety except to the extent they amend or modify a timely Filed Proof of Claim.  As of the Effective Date, only the Trustee shall be authorized or entitled to object to the allowance of any Claim Filed in connection with the Chapter 11 Cases.  Any such objection shall be filed not later than the later of (a) 90 days after the Effective Date and (b) 30 days after the Filing of such Claim.

### J.     Avoidance Actions

On the Effective Date, any and all Avoidance Actions shall be waived and released by the Debtors and the Trustee.

### K.     Validity of Corporate Actions

Entry of the Confirmation Order by the Bankruptcy Court shall constitute due authorization (a) required for the full validity, enforceability and effectiveness of the Plan and all transactions provided for in the Plan, notwithstanding any provisions of law which would otherwise require the approval of such transactions by the Trustee, the board of directors, shareholders or other constituents of the Debtors, and (b) for the Trustee to take any and all actions and execute, deliver and file all agreements, certificates, notices and other documents necessary or appropriate to consummate the transactions provided for in the Plan.

### L.        Retention of Professionals by the Trustee

Subject to the limitations set forth in the Plan, counsel to the Trustee and other Professionals who may have been retained in the Chapter 11 Cases may, from time to time, following the Effective Date, provide legal or other professional services to the Trustee in connection with the Chapter 11 Cases. Such services may be paid from the Estate 363 Proceeds without the need for approval by the Bankruptcy Court. In the event of an appeal of the Confirmation Order, the Trustee intends to retain joint counsel with the Creditors with respect to such appeal.

### M.        Plan Distributions.

Distributions on account of the Allowed Claims and Interests under the Plan shall be made by the Trustee.   The Trustee may utilize the assistance of outside parties to effect Distributions under the Plan to the extent they deem it to be necessary or desirable to do so.  The Distributions and other treatment afforded holders of Administrative Claims, Claims and Interests under the Plan will be the only payments received.  The Trustee will be exculpated from liability for any errors or omissions made with respect to Distributions under the Plan, except for liability for any errors or omissions arising from such party's own gross negligence or willful misconduct.

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Trustee after the date on which any related proof of Claim was filed, or after the date hereof if no proof of Claim was filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Trustee has not received a written notice of a change of address.

No payment of Cash in an amount of less than $100 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be distributed to the remaining holders of Allowed Claims in the same Class.

The Trustee shall be entitled, but shall have no obligation, to deduct any federal, state or local withholding taxes from any Distribution made as reasonably appropriate.  All Persons holding Allowed Claims shall be required to provide any information reasonably requested to effect the withholding of such taxes, including, without limitation, delivering to the Trustee a properly executed Form W-9 or equivalent at the address provided below, and the Trustee may withhold any Distribution absent the provision of such information or further Order of the Court.

Ian J. Gazes

Gazes LLC

151 Hudson Street

New York, New York 10013

If a Claimant does not return the completed Form W-9 to the Trustee, the Trustee will be allowed to retain Distributions to such Claimant until the appropriate tax identification information is provided. The Trustee will provide two notices to each Claimant of its obligation to submit an IRS Form W-9 or equivalent to the Trustee. If the Claimant does not provide a Form W-9 or equivalent to the Trustee within 60 days after the second notice is sent to the Claimant, then such Claimant's

Claim(s) will be deemed forfeited and expunged and the holder of such Claim(s) will be removed from the claims register and will receive no further Distributions under the Plan.

Unclaimed Distributions, including Distributions made by checks which fail to be negotiated, shall be held for the beneficial holders of respective Allowed Claims entitled thereto for a period of 90 days after the respective Distribution Date.  Any Distribution remaining unclaimed or un-negotiated 90 days after the applicable Distribution Date shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distributions(s) shall be deemed forfeited and expunged, such Unclaimed Distribution shall be re-distributed to the remaining holders of Allowed Claims in the same Class, and the holder of such Claim shall be removed from the Distribution Schedule, shall receive no further Distributions under the Plan and will be forever barred from asserting the Claim against the Debtors or the Trustee.  Nothing contained in the Plan shall require the Trustee to attempt to locate any holder of an Allowed Claim other than by reviewing the proofs of Claim and records of the Debtor.

**N.      Full and Final Satisfaction**

All payments and all Distributions under the Plan shall be free and clear of all liens, claims and encumbrances and in full and final satisfaction, release and settlement of the Debtors' obligations with respect to all Claims, except as otherwise provided in the Plan.

**O.      Treatment of Executory Contracts**

Pursuant to Article IV of the Plan, all executory contracts that were not specifically assumed or rejected as of the Confirmation Date shall be deemed rejected effective as of the Confirmation Date. Each counterparty to a contract rejected under the Plan or by any Final Order that was not otherwise subject to a Bar Date shall be entitled to file, no later than thirty (30) days following the Confirmation Date, a proof of claim for any damages arising from the rejection of the contract pursuant to § 365 of the Bankruptcy Code.  The failure of the counterparty to a rejected contract to file a proof of claim within the proscribed time period shall forever bar such Person from asserting any Claim for rejection damages.  The Filing of any such proof of claim on account of rejection damages shall not preclude the Trustee from objecting to such Claim if the Trustee deems such an objection to be appropriate.

**P.      Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

**Q.      Effect of Confirmation of the Plan**

Article VIII of the Plan details the effect of Confirmation of the Plan by the Bankruptcy Court.  The Confirmation Order will be the final determination of the rights of all Claimants and Interest holders to participate in the Distributions under the Plan, whether or not (a) a proof of Claim or interest is Filed or deemed Filed under § 501 of the Bankruptcy Code, (b) such Claim is an Allowed Claim, or such Interest is deemed an Allowed Interest, or (c) the holder of such Claim or Interest has accepted

the Plan.  Because the Plan contemplates the liquidation of Assets of the Debtors, the Debtors will not receive a discharge pursuant to § 1141(d) of the Bankruptcy Code. The proponents consent to the exclusive jurisdiction of the Bankruptcy Court to hear and determine all matters concerning the Plan and related issues.

## R.    Exculpation

To the fullest extent permissible under the Bankruptcy Code, the Released Parties[5] shall neither have nor incur, and are hereby released from, any Claim, obligation, cause of action or liability of any kind or nature to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of its members, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of its successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for claims which arise or relate to actions or omissions determined in a Final Order to have constituted willful misconduct or gross negligence at any time.  In all respects the Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## S.    Releases

On the Effective Date, for good and valuable consideration, and to the fullest extent permissible under applicable law, each Person that has held, currently holds, or may hold a Released Claim[6] or any Released Third Party Causes of Action[7], shall be deemed to have and hereby does irrevocably

---

[5] "Released Parties" is defined in the Plan as (a) the Trustee, (b) Kriti, and (c) Ashley River II, and each of their predecessors, successors and assigns (whether by operation of law or otherwise), affiliates, current and former members, equity holders, officers, directors, employees, managers, shareholders, financial advisors, attorneys, accountants, investment bankers, consultants, and agents, provided, however, that "Released Parties" is not intended to include, and shall not be deemed to include Stuart Longman, the Gayla Longman Family Irrevocable Trust u/t/d 1/2010, any pre-petition members, officers or directors of either of the Debtors, or any affiliate of Stuart Longman other than Ashley River II.

[6] "Released Claim" is defined in the Plan as (a) claims or causes of action that arise in or have been or could have been asserted in the Chapter 11 Cases or by the Trustee, the Debtors or by Creditors relating to Claims or by holders of Interests relating to Interests, as the case may be, against the Released Parties, and (b) claims that otherwise arise from or relate to the Chapter 11 Cases, the 363 Sale, the Plan, or the negotiations and compromises relating to the 363 Sale, or set forth in the Plan, including, without limitation, any such claim, demand, right, liability, or cause of action for indemnification, contribution or any other basis in law or equity for damages, costs or fees incurred by the releasers herein arising directly or indirectly from or otherwise relating thereto, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (iii) the holder of a Claim based upon such debt voted to accept the Plan; provided, however, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from (x) claims or Causes of Action on account of conduct occurring after the Effective Date or (y) the performance of its obligations in accordance with the 363 Sale, the Confirmation Order or the Plan.

[7] "Released Third Party Cause of Action" is defined in the Plan as "any Claims or causes of action, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secure or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise,  whether asserted or unasserted as of the date of entry of the Confirmation Order, whether arising prior to or after the Petition Date, that are based upon, relate to, or arise out of or in connection with, in

and unconditionally, fully, finally, and forever waive, release, acquit and discharge each and all of the Released Parties, from any and all Released Claims and any Released Third Party Causes of Action.

The treatment of Claims and Interests under the Plan shall be, and shall be deemed to be, in exchange for and in complete satisfaction and settlement of all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Interests, or other rights of a holder of an Interest, against the Debtors or any of their respective assets, property and estate, or interests of any nature whatsoever, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Interests or other rights of an holder of an equity security or other ownership interest.  Upon the Effective Date, all rights of any equity security holder in the Debtors and all Interests shall be deemed terminated and cancelled.

Except as provided otherwise in the Plan or Confirmation Order, all entities shall be precluded from asserting against the Released Parties any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Interests, or other rights of a holder of an Interest, relating to the Debtors or their Assets, property, and Estates, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Interests or other rights of a holder of an equity security or other ownership interest.  In accordance with the foregoing, except as expressly provided in the Plan or Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the release of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Interests, or other rights of a holder of an equity interest in the Debtors, pursuant to sections 523 and 1141 of the Bankruptcy Code, and such release shall void and extinguish any judgment obtained against the Debtors and its assets, property and estate at any time, to the extend such judgment is related to a Claim, debt or liability or terminated right of any holder of any Interest in the Debtors.

**T.    Injunction**

On the Effective Date of the Plan, except as otherwise provided in the Plan or the Confirmation Order, all Persons shall be deemed to be bound by the terms of the Plan, including holders of Claims or Interests not listed on the Schedules, or listed on the Schedules as disputed, unliquidated or contingent, who did not file proofs of Claim or Interest by the applicable Bar Date, and will be prohibited from:

---

whole or in part any act, omission, transaction, event or other circumstance relating to the Debtors, any transaction directly or indirectly related to the Debtors, or the Chapter 11 Cases and taking place or existing, or arising prior to the Effective Date; provided, however, that "Released Third Party Causes of Action" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the 363 Sale, the Confirmation Order or the Plan."

a)      commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on such Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates,

b)      the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property, or estates on account of any Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan,

c)      creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan,

d)      except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estate, with respect to any such Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan, and

e)      proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

Nothing in the injunction shall preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers, provided, that, except in connection with a properly Filed Allowed proof of Claim, the United States of America, any State or any of their respective police or regulatory agencies shall not be permitted to obtain any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Debtors, the Estates or any of their assets or property with respect to any such Claim or other debt or liability or Interest or other right of equity interest that is released, terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power.

Nothing in the injunction shall preclude the holder of a Claim against the Debtor from pursuing any applicable insurance after the Effective Date, from seeking discovery in actions against third parties or from pursuing third-party insurance that does not cover Claims against the Debtors, and nothing in this injunction shall limit the rights of a holder of a Claim against the Debtors to enforce the terms of the Plan.

The Releases are a critical component of the Plan. The release of the Creditors was negotiated in connection with the Plan and was a material factor in Kriti's agreement thereto. The Proponents have considered whether they have any claims or causes of action against the Released Parties and have determined that there are no viable claims or causes of action to be pursued. Accordingly, the Proponents believe that the Releases provided by the Plan recognize the significant contributions of the Released Parties and are fair in light of the lack of any materials claims against them. The Releases are in the best interests of the Debtors and the Debtors' Estates.

## U.    Release of Liens

Except as otherwise provided in the Plan or other agreement or document created in connection with the Plan, all liens, encumbrances and other security interests against Assets of the Estate shall be deemed fully and completely released and discharged and all of the Assets of the Estate shall be deemed free and clear of any such liens, claims and encumbrances on and after the Effective Date.

## V.    Dissolution of the Committee

### ARTICLE VII.    Confirmation and Consummation Procedures

## A.    Overview

If all classes of claims and equity interests accept a chapter 11 plan, a bankruptcy court may confirm the plan if it independently determines that the requirements of § 1129(a) of the Bankruptcy Code have been satisfied. Section 1129(a) sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible." The "best interests" test is discussed in more detail below but generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under Chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, also discussed in more detail below, a bankruptcy court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. Here, the Proponents believe that the Plan satisfies all the applicable requirements of § 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors' test and the feasibility requirement.

The Bankruptcy Code does not require that each holder of a claim or equity interest in a particular class vote in favor of a plan for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of creditors will be determined to have accepted the plan if the bankruptcy court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. Similarly, a class of equity security holders will have accepted the plan if the bankruptcy court determines that the plan has been accepted by holders of two-thirds of the number of shares actually voting in such class.

The bankruptcy court also may confirm a Chapter 11 plan even though fewer than all the classes of impaired claims and equity interests accept such plan. For a Chapter 11 plan to be confirmed despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at

least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under § 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property from the estate, unless the senior class receives property having a value equal to the full amount of its allowed claim.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interest in such class.

Here, the Plan has been structured so that it will satisfy the foregoing requirements as to any rejecting Class of Claims or Interests, and can therefore be confirmed, if necessary, over the rejection by any (but not all) Classes of Claims or Interests.

**B.      Confirmation of the Plan**

   (1)  Elements of § 1129 of the Bankruptcy Code

 **At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under § 1129 of the Bankruptcy Code are satisfied.**

Such conditions include the following:

   (a)  The Plan complies with the applicable provisions of the Bankruptcy Code.

   (b)  The Proponents have complied with the applicable provisions of the Bankruptcy Code.

   (c)  The Plan has been proposed in good faith and not by any means proscribed by law.

   (d)  Any payment made or promised by the Proponents or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court; and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(e)     With respect to each Impaired Class of Claims or Interests, each holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of the Claims or Interests held by such entity, property of a value, as of the applicable consummation date under the Plan, that is not less than the amount that such entity would receive or retain if the Debtor s were liquidated on such date under Chapter 7 of the Bankruptcy Code.

(f)     Each Class of Claims or Interests entitled to vote has either accepted the Plan or is not Impaired under the Plan.

(g)     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims (including Professional Fees) and Priority Claims will be paid in full on the applicable consummation date and that Priority Tax Claims will be paid in full, in cash, on the Effective Date or as soon as practicable thereafter.

(h)     At least one Impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

(i)     Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any other successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

(j)     All fees payable under § 1930 of Bankruptcy Code, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

**The Proponents believe that the Plan will satisfy all the statutory provisions of Chapter 11 of the Bankruptcy Code, that the Proponents have complied or will have complied with all of the provisions of the Bankruptcy Code, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.**

(2)     Acceptance

A Class of Claims will be deemed to have accepted the Plan if the Plan is accepted, with reference to a Class of Claims, by at least two-thirds in amount and more than one-half in number of the Allowed Claims of each such Class of Claims.

(3)     Best Interests Test

With respect to each Impaired Class of holders of Claims and Interests, Confirmation of the Plan requires that each such holder either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the applicable consummation date under the Plan, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

To determine what holders of Claims and Interests of each Impaired Class would receive if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must determine the proceeds that would be generated from the liquidation of the properties and interests in property of the Debtors in a Chapter 7 liquidation.  The proceeds that would be available for satisfaction of Claims against and Interests in the Debtors would consist of the proceeds generated by disposition of the unencumbered equity in the properties and interests in property of the Debtors and the cash held by the Debtors at the time of the commencement of the liquidation case.  Such proceeds would be reduced by the costs and expenses of the liquidation and by such additional administration and priority claims that may result from the termination of the business of the Debtors and the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under Chapter 7 of the Bankruptcy Code would include the fees payable to a trustee in bankruptcy, and the fees that would be payable to additional attorneys and other professionals that such a trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases, such as compensation for attorneys, financial advisors, accountants and costs that are allowed in the Chapter 7 proceedings.  In addition, Claims would arise by reason of the breach or rejection of obligations incurred and executory contracts entered into or assumed by the Debtors during the pendency of the Chapter 11 Case.

The foregoing types of Claims and such other Claims which may arise in the liquidation or result from the pending Chapter 11 Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay unsecured Claims arising on or before the Petition Date.

To determine if the Plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of the liquidation of the properties and interests in property of the Debtors (net of the amounts attributable to the aforesaid claims) is then compared with the present value offered to such classes of Claims and Interests under the Plan.

In applying the "best interests" test, it is possible that Claims and Interests in the Chapter 7 case may not be classified according to the seniority of such Claims and Interests as provided in the Plan. Indeed, some creditors may be subject to contractual subordination and may, therefore, be subject to a lower priority classification than that provided for in the Plan. The Proponents believe that the most likely outcome of liquidation proceedings under Chapter 7 would be the application of the rule of absolute priority of distributions.  Under that rule, no junior creditor receives any distribution until all senior creditors are paid in full with interest, and no stockholder receives any distribution until all creditors are paid in full with interest.

After consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Cases, including the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, the Proponents have determined that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtors under Chapter 7 of the Bankruptcy Code.

    (4)      Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Because Distributions will be made only to the extent of the Estate 363 Proceeds, the Proponents believe the Plan is feasible.

    (5)      No Unfair Discrimination

A chapter 11 plan "does not discriminate unfairly" if (a) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to the legal rights of the non-accepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests.  The Proponents believe that under the Plan all Impaired Classes of Claims and Interests are treated in a manner that is consistent with the treatment of other Classes of Claims and Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such Class.  Accordingly, the Proponents believe the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

    (6)      Fair and Equitable Test

The Bankruptcy Code establishes different "fair and equitable" tests for secured creditors, unsecured creditors and holders of equity interests as follows.  The following is a brief overview of the relevant tests:

    (a)      ***Secured Creditors.*** (i) (x) The holders of such claims retain liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (y) each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property, or (ii) for the sale, subject to § 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or (iii) for the realization by such holder of the indubitable equivalent of such claims. Since Kriti and Ashley River II will either receive cash on account of the Judgment on the Emerald Membership Interest, the Proponents believe this test is satisfied.

    (b)      ***Unsecured Creditors.*** Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan, subject to the applicability of the judicial doctrine of contributing new value.  Under the Plan, the holders of Interests will only receive a Distribution if the holders of General

30

Unsecured Claims are paid in full. As such, the Proponents believe this test is satisfied.

(c)    ***Holders of Interests.***  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of (x) the fixed liquidation preference or redemption price, if any, of such stock or (y) the value of the stock or (ii) the holders of interests that are junior to the stock will not receive any property under the plan, subject to the applicability of the judicial doctrine of contributing new value. Under the Plan, there are no holders of equity interests that are junior to the holders of Interests, as such, the Proponents believe this test is satisfied.

## ARTICLE VIII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

These are alternatives to the Plan, including, without limitation, the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code and subsequent liquidation of the Debtors by a Chapter 7 trustee.  After studying these alternatives, the Proponents have concluded that the Plan is the best alternative and will maximize recoveries of holders of Claims and Interests.  The following discussion provides a summary of the analysis supporting its conclusion that a Chapter 7 liquidation of the Debtors or an alternative Chapter 11 plan for the Debtors will not provide higher value to holders of Claims and Interests.

### A.    Liquidation Under Chapter 7 of the Bankruptcy Code

If no Chapter 11 plan can be confirmed, the Chapter 11 Cases may be converted to cases under Chapter 7, in which event a trustee would be elected or appointed to liquidate the properties and interests in property of the Debtors for distribution to its creditors in accordance with the priorities established by the Bankruptcy Code.  The Proponents believe that liquidation under Chapter 7 would result in smaller distributions being made to creditors than those provided for under the Plan because of the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee for bankruptcy and professional advisors to such trustee and the substantial increases in claims which would have to be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases.  Accordingly, the Proponents have determined that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtors under Chapter 7.

### B.    Alternative Chapter 11 Plans

The Proponents have examined other alternatives to the Plan and believe that the Plan, as described herein, enables holders of Claims to realize the best recoveries under the present circumstances.

## ARTICLE IX.          CONCLUSION

The Proponents believe that the Plan is in the best interest of all holders of Claims and Interests and urges all holders of Impaired Class 1 and 2 Claims against the Debtors to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying the Disclosure Statement.

Dated:  June 8, 2015


**EMMET, MARVIN & MARTIN, LLP**          **GAZES LLC**


/s/ Thomas A. Pitta                              /s/ Ian J. Gazes
Thomas A. Pitta, Esq.                           Ian J. Gazes, Esq.
120 Broadway, 32nd Floor                        151 Hudson Street
New York, New York 10271                        New York, NY  10013
(212) 238-3000 (Telephone)                      (212) 765-9000 (Telephone)
(212) 238-3100 (Facsimile)                      (212) 765-9675 (Facsimile)

COUNSEL FOR KRITI RIPLEY, LLC AND               COUNSEL FOR IAN J. GAZES, AS TRUSTEE FOR
ASHLEY RIVER PROPERTIES II, LLC                 EMERALD INVESTMENTS, LLC AND ASHLEY
                                                RIVER CONSULTING, LLC