UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Emerald Investments, LLC<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 14-13407 (MG) |
| In re:<br><br>Ashley River Consulting, LLC<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 14-13406 (MG) |

**DECLARATION OF DAVIDSON WILLIAMS, MANAGING MEMBER,
KRITI RIPLEY, LLC IN SUPPORT OF MOTION OF KRITI RIPLEY,
LLC, ASHLEY RIVER PROPERTIES II, LLC, AND IAN J. GAZES, AS
TRUSTEE FOR EMERALD INVESTMENTS, LLC AND ASHLEY RIVER
CONSULTING, LLC, FOR ORDER APPROVING MARKETING, BIDDING AND
SALE PROCEDURES IN CONNECTION WITH JOINT PLAN OF LIQUIDATION**

I, **DAVIDSON WILLIAMS**, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.　　I am a Managing Director of Kriti Ripley, LLC. ("**Kriti**"), the managing member of Ashley River Properties II, LLC ("**Ashley River II**" and together with Kriti, the "**Creditors**"). I submit this declaration in further support of the motion (the "**Motion**")[1] of Ian J. Gazes (the "**Trustee**", and together with the Creditors, the "**Proponents**"), as chapter 11 trustee of Emerald Investments, LLC ("**Emerald**") and Ashley River Consulting, LLC ("**ARC**" and, together with Emerald, the "**Debtors**") and the Creditors for entry of an order approving the marketing, bidding and auction procedures for the sale (the "**Sale**") of the Marina Property.

---

[1]　　Capitalized terms not otherwise defined herein shall retain the meanings ascribed thereto in the Motion.

7217288_4

A.  Determination of Strike Price; Capitalization of Ashley River II

2. The marketing, bidding and auction procedures for the Sale are based on a strike price of $18 million for the Marina Property (the "**Strike Price**"). The Proponents established the Strike Price by agreement based on an evaluation of the capitalization of Ashley River II as of December 31, 2014. Two elements were considered: (a) the long term liabilities of Ashley River II; and (b) the total capital contributions by Kriti and Emerald to Ashley River II.

3. The total long term liabilities of Ashley River II consist of two elements: (a) a mortgage loan in favor of Kriti, and (b) various notes payable to affiliates of Kriti. The long term liabilities of Ashley River II as of December 31, 2014 totaled *$14,453,652.20*, as follows[2]:

| Note Description | Note Date | Principal Amount | Accrued Interest | Total |
| --- | --- | --- | --- | --- |
| *Mortgage Loan:* | | | | |
| Kriti Ripley | 03/22/13 | $5,000,000.00 | $174,843.75 | $5,174,843.75 |
| | | | | |
| *Affiliate Notes Payable:* | | | | |
| Kriti Holdings | 08/03/07 | $3,739,000.00 | $266,403.75 | $4,005,403.75 |
| Davidson Williams | 10/30/07 | $25,000.00 | $1,437.07 | $26,437.07 |
| Navarino Oil #1 | 03/23/10 | $4,000,000.00 | $285,000.00 | $4,285,000.00 |
| Navarino Oil #2 | 12/17/13 | $170,000.00 | $7,937.90 | $177,937.90 |
| Navarino Oil #3 | 01/21/14 | $215,000.00 | $8,972.78 | $223,972.78 |
| Navarino Oil #4 | 03/14/14 | $112,083.75 | $4,108.19 | $116,191.94 |
| Navarino Oil #5 | 03/28/14 | $262,204.50 | $8,946.41 | $271,150.91 |
| Navarino Oil #6 | 05/09/14 | $167,862.90 | $4,851.20 | $172,714.10 |
| **Affiliate Subtotal:** | | **$8,691,151.15** | **$587,657.30** | **$9,278,808.45** |
| | | | | |
| **Grand Total:** | | **$13,691,151.15** | **$762,501.05** | **$14,453,652.20** |

---

[2]   See Balance Sheet of Ashley River II as of December 31, 2014, included as Exhibit 17 hereto.

4. The total capital contributions by Kriti and Emerald to Ashley River II totaled *$5,750,000.00*, as follows:

| Member Capital Contributions | Date | Kriti Ripley | Emerald Investments | Total |
|---|---|---|---|---|
| Initial Capital | December 2003 | $1,250,000.00 | $2,500,000.00 | $3,750,000.00 |
| Additional Capital | March 2005 | $2,000,000.00 | $0.00 | $2,000,000.00 |
| Total Capital Contributed | | $ 3,250,000.00 | $ 2,500,000.00 | $ 5,750,000.00 |

5. The total of Ashley River II's long term liabilities and membership contributions as of December 31, 2014 was *$20,203,652.20*. Recognizing that interest continues to accrue on the long term liabilities from December 31, 2014 until the date of Sale, and recognizing further that there would be costs associated with the sale of the property, including brokerage fees and administrative expenses, the Proponents agreed that $18 million was a reasonable value to set as the Strike Price without unduly chilling the market for the Marina Property. In the event of a sale at the Strike Price, the net proceeds thereof would be sufficient to repay Ashley River II's liabilities in full and result in an equity distribution to the members of Ashley River II. However, at that level all of Emerald's distribution would be conveyed to Kriti in partial satisfaction of the Judgment.

B. The Validity of the Kriti Affiliate Loans.

6. In an arbitration in 2010, Emerald challenged the validity of the various loans that had been made by affiliates of Kriti as they existed at that time, including loans by Kriti Holdings, Inc. ("**KHI**"), Davidson Williams ("**Williams**") and Navarino Oil S.A. ("**Navarino**" and, together with Kriti, KHI and Williams, the "**Affiliate Lenders**"). Emerald also challenged a note payable to Lunar Systems, a third party not related to Kriti or any of its affiliates ("**Lunar**"). The total amount due and owing by Ashley River II to the Affiliate Lenders and Lunar as of March 31, 2010 was *$7,493,077.35*.

7. On March 31, 2010, Ashley River II was also obligated to Bank of America for a loan in the amount of *$5,300,000.26* secured by a mortgage on the Marina Property (the "**Bank of America Loan**"). KHI was a guarantor of the Bank of America Loan.

8. Accordingly, the total Long Term Liabilities of Ashley River II as of March 31, 2010, including the obligations to the Affiliate Lenders, Lunar, and Bank of America were *$12,793,077.61* (the "**March 2010 Liabilities**"), as follows[3]:

| Note Description | Note Date | Principal Amount | Accrued Interest | Total |
|---|---|---|---|---|
| **Mortgage Loan:** | | | | |
| Bank of America | 3/22/13 | $5,300,000.26 | $0.00 | $5,300,000.26 |
| **Affiliate and Lunar Notes Payable:** | | | | |
| Kriti Holdings | 8/03/07 | $2,955,000.00 | $317,290.66 | $3,272,290.66 |
| Davidson Williams | 10/30/07 | $25,000.00 | $5,474.19 | $30,474.19 |
| Lunar Systems | 12/14/07 | $175,000.00 | $15,312.50 | $190,312.50 |
| Navarino Oil #1 | 3/23/10 | $4,000,000.00 | $0.00 | $4,000,000.00 |
| **Affiliate and Lunar Notes Subtotal:** | | $7,155,000.00 | $338,077.35 | $7,493,077.35 |
| **Grand Total:** | | $12,455,000.26 | $338,077.35 | $12,793,077.61 |

9. On October 28, 2010, an award was issued in the arbitration case (the "**2010 Arbitration Award**"), The arbitrators ruled that the notes payable to the Affiliate Lenders and Lunar were valid liabilities of Ashley River II, finding as follows:

> The Panel finds that Kriti and its affiliates loaned to the Company the sum of $7,493,077.35, as set forth on the Company balance sheet, dated as of March 31, 2010 (JE 104)("Financial Statement"). These loans are not disputed by Emerald. Rather, Emerald seeks to have these loans treated as equity claiming that the loans were disguised equity contributions as they were not arm's length loans and did

---

[3] See Balance Sheet of Ashley River II as of March 31, 2010, annexed hereto as Exhibit 3. Also, KHI, Williams, Navarino and Lunar Promissory Notes, annexed hereto as Exhibits 6, 7, 8 and 9, respectively.

-4-

not have the indicia of debt. We find the cases cited by Emerald unpersuasive to reclassify these loans as equity contributions. Moreover, Article 5.2 of the Operating Agreement provides for members to loan money to the Company…. Thus, we find that the loans to the Company from the Kriti affiliates and Davidson Williams should be treated as loans.[4]

In addition, the 2010 Arbitration Award found that there was not sufficient evidence to find corporate waste by Kriti. The panel reasoned that:

> The decisions [by Kriti] to construct a bulkhead, dredge the canal and construct the out building were well within the business judgment of Kriti as managing member; and the application of funds by [Ashley River II] was, also, well within reasonable business efforts to manage a complex piece of waterfront property.[5]

10. The 2010 Arbitration Award was confirmed pursuant to a stipulated order of the Supreme Court of the State of New York entered on December 29, 2011 (the "**2011 Order**").[6]

11. Accordingly, during the period from March 31, 2010 through December 31, 2014 (the "**Bridge Period**"), the long term liabilities of Ashley River II increased from $12,793,077.61 to $14,453,652.20, a total of $1,660,574.59 (the "**Debt Increase**"). The following is a description of the components that make up the Debt Increase.

C.    Refinancing of the Bank of America Loan

12. On July 14, 2011, Ashley River II executed the Seventh Amendment to the Bank of America Loan. In exchange for an extension of the maturity date of the Bank of America Loan, Ashley River was required to make a principal payment of $500,000 (the "**Bank of America Paydown**"). KHI advanced $550,000 pursuant to the Fifth Amendment to the KHI

---

[4]    A copy of the 2010 Arbitration Award is annexed as Exhibit 1. See, pp. 2-3.

[5]    *Id.*, p. 4

[6]    A copy of the 2011 Order is annexed hereto as Exhibit 2.

Loan to pay the Bank of America Paydown and certain fees related thereto of an additional $37,500.[7]

13.     Thereafter, on February 15, 2013, Bank of America notified Ashley River II and KHI that an Event of Default had occurred with respect to the Bank of America Loan – the loan had matured on December 28, 2012 and remained unpaid – and accelerated the balance thereof.[8]

14.     On March 22, 2013, Kriti obtained a loan in the amount of $5,000,000.00 from Citibank, N.A. against its credit (the "**Citibank Loan**").  Kriti loaned the entire proceeds of the Citibank Loan to Ashley River II against a note from Ashley River II that contained substantially identical terms as the note from Kriti to Citibank evidencing the Citibank Loan (the "**Kriti Loan**").  Ashley River II used the proceeds of the Kriti Loan to (a) repay the Bank of America Loan, (b) pay certain fees and expenses related to the Bank of America Loan, and (c) fund general operating expenses of Ashley River II.[9]  The Kriti Loan passed through the interest costs of the Citibank Loan to Ashley River II without markup or fees.

D.    The Interest Write-Downs and Reductions

15.    In September 2013, KHI, Navarino, and Williams agreed to write off all of the interest that had accrued on the loans to Ashley River II from origination through May 31,

---

[7]    See Exhibit 6(A)-(G) (KHI Promissory Note, Amendments thereto, & General Ledger); Exhibit 5 (Seventh Amendment to Bank of America Promissory Note). Note, Ashley River II retained the remaining $12,500 of he $550,000 advance under the KHI Note, as amended, for use as working capital.

[8]    A copy of the Bank of America Notice of Default is annexed hereto as Exhibit 10.

[9]    Copies of the Note from Ashley River II to Kriti and the Bank of America Loan Pay-Off Letter are annexed hereto as Exhibit 11. Upon the closing of the Citibank Loan, Kriti paid directly (a) the balance of the Bank of America Loan and (b) the related fees and expenses. Kriti then transmitted the remaining proceeds of the Citibank Loan to Ashley River II, but retained a reserve approximately equal to one month's interest on the Citibank Loan.

-6-

2013. KHI wrote off $1,454,620 of interest, Navarino wrote off $1,021,946.48, and Williams wrote off $13,748.33. The aggregate amount of these write offs is *$2,486,277.98* (the "**Interest Write-Down**").[10] The Interest Write-Downs represent a savings to Ashley River II of $825,703.39 more than the total Debt Increase during the Bridge Period.

16. KHI, Navarino, and Williams also agreed in September 2013 to reduce the interest rates on their loans to 4.5%, down from 10% for KHI and Williams and 8% for Navarino (the "**Interest Rate Reduction**"). The Interest Rate Reduction results in annual savings to Ashley River II of nearly $400,000 per year.

E.  Dredging Expenses

17. During the Bridge Period, Navarino made five (5) additional loans in the aggregate principal amount of $927,161.15 (the "**Additional Navarino Loans**").[11] Four (4) of the Additional Navarino Loans, in the aggregate principal amount of $664,956.65, were made to fund Ashley River II's share of the costs related to dredging work in and near the Marina Property.[12]

F.  Lunar Systems Payment

18. The fifth Additional Navarino Loan was made to fund the payment of a judgment in favor of Lunar in the amount of $262,204.50 (the "**Lunar Judgment**") on a Note issued by Ashley River II dated December 14, 2007.[13]

---

[10]   See Exhibits 6(F); 7(A); and 9(A).

[11]   Copies of the Notes and other documentation relating to the Additional Navarino Loans are annexed hereto as Exhibits 12-16.

[12]   Documents evidencing Ashley River II's share of those dredging expenses are attached to each of the relevant Additional Navarino Loans. See Exhibits 12, 13 14 and 16.

[13]   A copy of the Lunar Note is annexed hereto as Exhibit 8. See also, Exhibit 15.

-7-

19. The Additional Navarino Loans have accrued interest in the amount of $34,806.48, and the aggregate balance of the Additional Navarino Loans as of December 31, 2014 was *$961,967.63*.

G. <u>Satisfaction of Ashley River II's Expenses</u>

20. During the Bridge Period, KHI made advances under the KHI Loan to Ashley River II in the principal amount of $964,000. In addition to the Bank of America Paydown, the remaining $414,000 of those funds were used by Ashley River II to fund (a) interest payments on the Bank of America Loan, (b) expenses related to permitting for the acquisition of additional slips for the Marina Property, (c) legal fees related to the Lunar litigation, (d) legal fees related to the various litigations with Emerald Investments to which Ashley River II was a party, and (e) other operating expenses of Ashley River II. These expenses are consistent with the expenditures prior to March 31, 2010 that were found not to constitute waste in the 2010 Arbitration Award.

H. <u>There Is No Legitimate Dispute Concerning the Liabilities of Ashley River II</u>

21. As outlined above, the Affiliate Lenders have financed Ashley River II's expenses to the extent the limited marina revenues have been insufficient to do so. All of the amounts loaned during the Bridge Period were used to fund expenses similar to those that had been incurred prior to the 2010 Arbitration Award and that were found to be appropriate uses of Ashley River II's funds at that time.

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed: June 16, 2015                    /s/ Davidson Williams
                                           Davidson Williams
                                           Managing Director
                                           Kriti Ripley, LLC