UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                              :          Case No. 14-13407-mg
                                                    :
EMERALD INVESTMENTS, LLC                            :
                                                    :          Chapter 11
                        Debtor.                     :
------------------------------------------------------x

## AFFIDAVIT

STATE OF SOUTH CAROLINA    )
                           ) ss.:
COUNTY OF CHARLESTON       )

Peter Fennelly ("Affiant"), being duly sworn, deposes and says:

1. Affiant is a commercial real estate broker licensed under the laws of the State of South Carolina and Market President of Colliers International Charleston, LLC ("**Colliers**") with offices located at 25 Calhoun St, Suite 220, Charleston 29401. I submit this affidavit in connection with the application of Ian J. Gazes as chapter 11 trustee (the "**Trustee**") of the estate of Emerald Investments, LLC (the "**Debtor**") to retain Colliers as his real estate broker in connection with that certain property known as the Ripley Light Yacht Club, an 87 slip marina with land containing 5.6+/- acres located at Ripley Point Drive, Charleston, South Carolina, 29407 ("**Property**").

2. Except as provided herein, to the best of Affiant's knowledge, information, and belief, neither Affiant nor any employee of Colliers has any connection in this matter with Emerald Investments, LLC (the "Debtor"), the Debtor's attorney, the Debtor's creditors, the Office of the United States Trustee and its employees, or any other parties in interest or their respective attorneys except that Colliers was previously engaged by Ashley River Properties II, LLC ("**Ashley**"), the owner of the Property, to list and market the Property prior to the Debtor's bankruptcy filing. Colliers was retained by Ashley on July 22, 2013 subject to an agreement that entitled Colliers to a commission equal to 5% of the purchase price received by Ashley on account of the sale of the

Property. Colliers prepared a flyer and offering memorandum for the Property to be used as marketing materials. Ashley retained the land-planning firm Seamon Whiteside to create a conceptual plan for the Property. This conceptual plan also included other neighboring properties not owned by Ashley and illustrated a multifamily residential development and marina expansion. Colliers assisted Seamon Whiteside in the design of the conceptual plan. Colliers included the conceptual plan in the offering memorandum. In accordance with the exclusive listing agreement between Colliers and Ashley, Colliers conducted a broad marketing campaign for the Property that included email blasts to Colliers proprietary and non-proprietary distribution lists, phone calls, meetings and property tours with prospective buyers. Colliers and Ashley agreed that due to the complexity of marketing an existing 86 slip marina, the permits for a potential 200 slip expansion and the developable land all together, Colliers would market the Property without an asking price and solicit bids. The logic behind this process being that sufficient buyer demand would result in multiple offers providing Ashley with leverage to negotiate favorable terms and a higher sale price. This approach would also give Ashley the flexibility to sell the marina to one buyer and the developable land to another should the combination of the two offers result in the highest sale price. Through Colliers efforts, the Property was exposed to more than 5,000 potential buyers and brokers via email blasts, calls and other standard marketing practices resulting in thirty-six (36) confidentiality agreements executed. During the course of the marketing campaign, Colliers was successful in soliciting eight (8) written offers to purchase the Property. Despite the best efforts of Colliers, no offer was acceptable to Ashley. To date, no agreement has been reached between Ashley and any party for the sale of the Property. Colliers has not received any compensation from Ashley and is not currently owed any such compensation from Ashley. Furthermore, Colliers exclusive listing agreement entered into on July 23, 2013 with Ashley has expired.

3. Neither the Affiant nor Colliers prepared the Debtor's petition for relief under title 11 of the United States Code, has acted as real estate broker for the Debtor or any creditor other than as set forth in paragraph "2" above, or served as an examiner in this proceeding. Affiant verily believes that he and every employee of Colliers is a "disinterested person" pursuant to and within the meaning of the section 101(14) of the Bankruptcy Code.

4. Affiant represents that to the best of his knowledge and belief, Colliers and the employees of Colliers do not hold or represent any interest adverse to the estate, the Debtor or the creditors in this case by reason of the retention sought herein, and have no connection with the Debtor, creditors or any other parties in interest or their respective attorneys in this matter except as set forth in paragraph "2" above.

5. No agreement or understanding exists between Colliers and any other person for a division of compensation paid or to be paid for services rendered in this proceeding, and in accordance with Bankruptcy Rule 2016, no division of compensation shall be made by Affiant and no agreement prohibited by 18 U.S.C. § 155 has been or will be made.

6. Kriti Ripley, LLC (Kriti), holds a 30% interest in Ashley. Pursuant to a separate agreement to induce Colliers to take on the marketing assignment, Kriti has agreed to reimburse Colliers for all out of pocket advertising costs associated with said marketing of the Property.

_____
Peter Fennelly

Signed and sworn to before me
this 24 day of June __, 2015

_____
Notary Public

MEGAN E BALOT
Notary Public
South Carolina
My Comm. Expires May 13, 2025

3